### DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

### OF THE

## STATE OF NEW JERSEY,

### JUNE TERM, 1892.

---

RALPH G. PACKARD, PLAINTIFF IN ERROR, v. BERGEN
NECK RAILWAY COMPANY, DEFENDANT IN ERROR.

1. When an exception is prayed to a distinct and separate proposition of
law contained in a charge to a jury, the trial judge may allow the
exception generally or he may require the exceptant to state and
insert in the bill of exceptions the ground or grounds of objection. In
the latter case the exceptant will be confined to the grounds thus
stated on a review, by writ of error; if a general exception is allowed
it will draw into review any objections on any grounds appearing in
the bill of exceptions.

2. Proceedings to condemn lands were taken by a railroad company under
the General Railroad act, and upon an appeal from the award of com-
missioners an issue was framed and tried in the Circuit Court. *Held*—
1. The jury were not required to express in their verdict the value of
the land taken and the damages in separate sums, but might blend
both in one aggregate sum.
2. It is proper to permit the jury on such a trial to fix the compensa-
tion to be awarded the landowner by comparing the market value of
the whole tract, at the date of the commissioners' award, with its

market value at the same date, if the condemned land had then been taken and the railroad constructed thereon in conformity to the duly announced plan of the condemning company, and by awarding the difference, provided any increase of value resulting to the land in common with other lands is excluded from their consideration or it appears clearly there has been no such increase.

3. In the latter case it is not erroneous to give such instructions without qualifying them by a direction to exclude from consideration any such increase of value.

3. When a condemning company has not set out in the petition for the appointment of commissioners the plan of construction of their railroad over the condemned land, it may, on the trial before a jury, disclose and announce such plan, and in that case the award should be made in view of the use of the land in any lawful mode within such plan, which plan ought, if required, to be made part of the record; but if it omits or refuses to disclose its plan, then the award should be made in view of the use of the land in any lawful mode whatever.

4. Whether or not the company is possessed of lawful power to construct the railroad according to such plan cannot be considered by the Circuit Court on the trial of an appeal, nor can it be submitted to the jury to say what plan ought to be adopted by the railroad company.

5. The landowner may show to what uses his land is adapted, and, in proper cases, may resort to expert evidence for that purpose, but a comparison of such uses is for the jury and no one is an expert in respect thereto.

6. The situation and condition of other lands in the vicinity of the land in question may be shown as tending to aid in determining the value of the latter; but as the distance increases the force of the evidence diminishes, and the trial judge may exclude such evidence when the compared lands are so distant that the evidence can have no practical value.

The Bergen Neck Railway Company, incorporated under the General Railroad law, took proceedings to condemn certain lands in Hudson county, belonging to Ralph G. Packard and adjoining New York bay.

After the award, both parties appealed therefrom and an issue was framed and tried in the Hudson Circuit.

After verdict and judgment thereon, Packard sued out a writ of error and removed the cause to the Supreme Court. The judgment was there affirmed, and Packard has, by writ of error, removed the judgment of affirmance into this court for review.

For the plaintiff in error, *Charles W. Fuller* and *Joseph D. Bedle.*

For the defendant in error, *Charles D. Thompson* and *Charles L. Corbin.*

The opinion of the court was delivered by

MAGIE, J. The judgment now before us for review was founded upon an opinion which is reported in 25 *Vroom* 229.

Of the numerous objections presented by the assignments of error, but one was deemed of sufficient importance to require an expression of opinion. That objection was aimed at the instructions of the circuit judge to the jury in respect to the mode of determining the compensation to be awarded to the landowner. Those instructions were considered defective, because they allowed the jury to charge the landowner with any increase of value which his remaining lands (in common with other lands in the vicinity) had acquired by the construction of the railroad of defendant in error. But as the case showed that there was no increase of value, and as the exception under which the objection was presented was, in the opinion of that court, too broad, it refused to disturb the judgment for an innocuous error improperly presented.

The argument here has included not only the objection dealt with in the opinion of the Supreme Court, but other objections presented by the assignments of error.

The bill of exceptions contains the evidence taken at the trial and the charge of the trial judge, appended to which, among other things, is the following:

"Counsel for the defendant also prayed a bill of exceptions to that part of the charge of the court which permitted the jury to estimate damages in an aggregate sum based upon the difference between the fair market value of the property owned by Mr. Packard and affected by the condemnation as it stood on the 13th day of March, 1890, and what would have been the fair market value of the same property if on that day the

railroad had been constructed across it upon an embankment not over six feet above high water, and that the difference between those two sums would make the defendant whole, which bill of exceptions is allowed and signed and sealed accordingly, subject to the charge as above given in full.

"JONATHAN DIXON, [L. S.]
*Justice Supreme Court.*"

It was this exception which was considered by the Supreme Court to be incapable of drawing into review on error the ruling objected to. The argument of the court was that the exception did not specify a particular error, but was directed at a number of errors included in the ruling.

I find myself unable to agree to the conclusion arrived at below.

It is undoubtedly true that a general exception to a whole charge or even a part of a charge containing distinct and separate propositions of law will not be available. *Oliver* v. *Phelps, Spenc.* 180 ; *S. C.,* 1 *Zab.* 597 ; *Potts* v. *Clark, Spenc.* 536 ; *Associates, &c.,* v. *Davison,* 5 *Dutcher* 415 ; *Noyes* v. *State,* 12 *Vroom* 418 ; *S. C.,* 14 *Id.* 672 ; *Engle* v. *State,* 21 *Id.* 272. So a general exception to the opinion of the judge on a trial without a jury will not draw in question before a court of review the different legal propositions contained therein. *Kalbfleisch* v. *Standard Oil Co.,* 14 *Vroom* 259.

The doctrine that a single exception interposed to several distinct and separate legal propositions will not avail exceptant is doubtless founded on the rule, which is inflexible, that the party who objects in the course of a trial must bring his objection to the mind of the trial judge, so that he may correct erroneous expressions or explain what might otherwise mislead. Obviously such an exception, while logically asserting the error of each of the propositions of law involved, is considered unavailable, because the objection has not been leveled at a specific and distinct error and the attention of the judge has not been called to the precise point of the objection.

An exception to a charge containing various legal propositions must therefore single out and specify, one by one, the propositions objected to, and this may be done, as was said in *Potts* v. *Clark, ubi supra,* " either by saying in the bill that the party excepts to so much of the charge as instructs the jury that the law is so and so, or by stating, by way of recital, the part of the charge excepted to, or by calling on the court to charge in a certain way, and if the court refuse so to charge then by excepting to such refusal."

But a single proposition of law laid down in a charge may be objectionable upon several grounds, and, upon exception thereto, each of such grounds may be urged on review by writ of error.

In some cases the exception taken in the course of the trial must show the grounds of the objection made to the ruling, and no other ground will be considered on review. Thus, where evidence is offered for a purpose expressed to the court, for which purpose it was incompetent, an exception to its rejection cannot be maintained in a court of review on the ground that the evidence was admissible for another purpose. *Delaware, Lackawanna and Western R. R. Co.* v. *Dailey,* 8 *Vroom* 526. But the applicability of evidence offered to the issue being tried is not obvious. It is therefore the duty of the party offering it to open to the court the nature of the evidence and its purpose, so as to show its applicability. It is upon such circumstances that the trial judge acts, and the bill of exceptions must therefore show those circumstances, that the actual ruling may be reviewed.

When the evidence is closed and the trial judge proceeds to lay down the legal propositions which he deems applicable, his attitude is different. His rulings on the law are made on the case before him. If he omits to charge a pertinent legal principle he must be specially requested to charge before exception can be taken to the omission. *Mead* v. *State,* 24 *Vroom* 601. If he refused to charge as requested, the bill should show the request and refusal to charge on the subject at all or what his charge on such request was. *Conover* v. *Middletown,*

13 *Vroom* 382; *Petre* v. *State*, 6 *Id.* 64; *Donnelly* v. *State*, 2 *Dutcher* 463, 508; *Anderson* v. *Fitzgerald*, 4 *H. L. Cas.* 484; *McMahon* v. *Lennard*, 6 *Id.* 996.

But when the trial judge lays down in his charge a single legal proposition which a party deems improper and injurious, he may specifically except to that proposition. Such an exception is an averment that the proposition in its application to the case is erroneous in point of law and it will be available although it does not state the arguments or grounds on which error is predicated. The trial judge may doubtless require the objecting party to make known the ground or grounds of objection and to insert the same in the bill of exceptions. In such case, upon the principles already stated, the exceptant would be confined in a court of review to the specific grounds to which the attention of the judge had been thus called. But if the judge seals a general exception to a distinct legal proposition of his charge, upon review, objections can be made upon any ground appearing in the bill of exceptions.

This has already been settled in this court in the case of *Crater* v. *Binninger*, 4 *Vroom* 513, where a general exception to instructions in respect to the measure of damages was considered and the judgment below was reversed because those instructions were deemed to-be erroneous upon a ground which, although appearing in the case, had not been brought to the attention of the trial judge.

My conclusion is, that if this exception is directed to a single proposition of the charge, it draws into review any objections thereto which may be urged on grounds appearing in the case.

The question to be determined below was, What compensation should be paid to the landowner by the railroad company? The exception now in question was allowed to a part of the charge taken in connection with the whole charge, which is incorporated in the bill of exceptions. So read, the instruction complained of must have been understood by the jury to relate, not to damages *eo nomine*, but to the compensation of the landowner. This compensation might be determined, the

jury were told, by estimating the fair market value of the property affected by the condemnation on the date of the commissioners' award, and deducting therefrom the fair market value thereof on the same day, if the railroad had then been built in the manner shown by the record and avowed by the counsel of the company at the trial.

I have found it impossible to separate this proposition into two or more. In my judgment, it is a single and independent proposition to which the landowner might except, and this general exception draws into review any objections grounded on matter appearing in the bill of exceptions.

Objection to this instruction is first made on the ground that, by law, the jury are required to find (1) the value of the land taken by the railroad company and (2) the damages resulting therefrom to the remainder of the tract out of which the land is taken.

The railroad company was incorporated and acquired the right to condemn land under the General Railroad act. By the provisions of that law commissioners are to be appointed who are required to make "a just and equitable estimate or appraisement" of the land taken and "an assessment of damages to be paid," &c. *Rev.*, p. 928, § 12. A master's report under an order of the Court of Chancery, expressed in similar language, was held by Chancellor Green not to be objectionable because one aggregate sum was reported for the value of the land and damages. But he declared that the better practice was to determine and report the amounts separately, as such course afforded a better opportunity to test the propriety and accuracy of the determination. *Trenton Water Co. v. Chambers*, 2 *Beas.* 199.

The same act requires the jury, upon appeal, " to assess the value of said land   *   *   *   and damages sustained." A finding under this requirement, which determined the value of the land and the damages in separate sums would, no doubt, be unobjectionable, for the aggregate amount can be thus ascertained. But a finding of both the value of the land and damages in one sum will conform to the express

language of the act. An appeal may be taken from the commissioners' award, and the separate findings in such case, even if not expressly required by the act, would doubtless aid the party in determining whether or not to take such appeal. But the verdict of a jury on appeal is final, and no useful purpose will be served by separate findings in their verdict which are not expressly required by the act.

This objection cannot avail plaintiff in error.

It is next contended that the rule laid down for the guidance of the jury in determining the compensation to be awarded the landowner, is impracticable, misleading and unlawful.

The rule promulgated permitted a comparison between the market value of the land (part of which was taken) before the condemnation, and the market value if condemnation had been consummated and the railroad built according to the plan avowed to have been determined on.

If we leave out of view any increase of value occasioned by the railroad, it must be admitted that if such a comparison can be made with substantial accuracy and the difference paid the landowner in money, he will be made whole and have just compensation within the meaning of the constitutional requirement. The difficulty is not with the rule, but with its application. For the determination of the market value of land, which is that sum of money which a person, desirous but not compelled to buy and an owner willing but not compelled to sell, would agree on as a price to be given and received therefor, is beyond doubt difficult. The test is logically and legally correct, but it cannot be applied to land with the accuracy with which it can be applied to stocks, bonds and personal property generally. Still it is this test which admittedly must be applied, even when the value of the land and the damages are found in separate sums. In that case the market value of the land taken must be discovered and the injury to the remaining land can be fixed only by a comparison of market values. Since the remaining land is usually of irregular shape, the difficulty of making such comparison is by no means diminished. It is at least as

easy and practicable to make such a comparison, viewing the land as a whole, and, in my judgment, far more likely to produce a just result.

It is further said that the instruction complained of was unlawful, because it did not permit the jury to take into account the strip of land one hundred feet wide actually taken by the railroad.

I do not deem the language of the instruction open to this criticism, for the construction of the railroad across this tract on the embankment involved the taking of this land and must have been so understood. But the exception is to the instruction in connection with the rest of the charge which is all before us. Examining the context, it is perfectly plain that the instruction covered the whole diminution of value, as well that occasioned by the taking of the land as that occasioned by such taking and the construction of the railroad thereon to the remainder of the tract.

It is further urged that the instruction in question permitted the jury to deduct from the landowner's compensation whatever increase of value his land, in common with other land in the vicinity, acquired by the construction of the railroad.

Benefits thus acquired are not, under our General Railroad act, to be considered in determining the compensation of the landowner. The act does not, even if it could, require such benefits to be taken into account, and in the absence of legislative direction they are not to be considered. *State* v. *Miller,* 3 *Zab.* 383; *Williamson* v. *East Amwell,* 4 *Dutcher* 270; *Swayze* v. *New Jersey Midland, &c., Co.,* 7 *Vroom* 295; *Swanton* v. *Pierson,* 8 *Id.* 363; *Crater* v. *Fritts,* 15 *Id.* 374.

The contention is that the instruction now complained of should have been qualified by a direction to exclude from consideration such benefits.

Whether or not a particular instruction should be given or a certain qualification should be annexed to an instruction already given, must depend on the case which is being presented to the jury, for the trial judge is not to charge every

legal proposition which might be appropriate under supposable circumstances, but only such propositions as are pertinent to and required by the circumstances of the case in hand.

An objection to an omission to qualify an instruction should, therefore, be founded not only on the legal correctness of the proposition, but also upon its being apposite to the circumstances of the case, and the bill of exceptions should show such circumstances.

The bill of exceptions before us contains all the evidence which was laid before the jury. Its examination has led us to the conclusion arrived at in the Supreme Court, that it established the fact that the railroad added nothing whatever to the value of the land in question. But in our view, since the evidence therefore showed that no benefits had been conferred on the land by the railroad, a qualification to the instruction, such as is now contended should have been made, was not pertinent or required. It would have tended to confuse and mislead the jury, and the omission to qualify the instruction was, under the circumstances, no error.

The case, in this respect, differs from *Crater* v. *Binninger, ubi supra.* There the matter, the omission of which was held erroneous, was shown by the case to be pertinent to and required by the circumstances. Here the cirumstances show that the omitted matter would have been impertinent and useless.

The instruction which has been thus attacked is not open to any of the objections made.

It is deemed proper to notice the other objections urged in behalf of plaintiff in error.

One of the objections is made to the refusal of the trial judge to charge the jury as requested, the request being based upon the following circumstances:

It had appeared that the landowner had devised and was executing a plan for improving his land by dredging a channel of navigable depth from the deep water of New York bay, up to and through the land to a basin excavated thereon. The land to be taken by the railroad crossed the proposed canal.

Upon request at the trial the counsel of the railroad company announced that the road would be constructed along this land on an elevation of six feet above ordinary high tide and supported by a trestle or a solid embankment.

It is to be regretted, I think, that the law does not require the party condemning lands for public use to set out in the proceedings the mode in which the land condemned is to be used, so that it will become matter of record. The condemning party may designate the mode of use in its petition for the appointment of commissioners, and if it does the award should include damages predicated upon the use of the land in the designated mode. If the mode is not designated in the petition or when called on before the commissioners or jury, then the award should include damages predicated upon the use of the land in any lawful mode for the purposes of the party. *National Docks, &c., Co.* v. *United, &c., Cos.*, 24 *Vroom* 217. And if, when called upon to declare before the commissioners or jury the mode in which the land is to be used, the party announces its plan, the award may be made on the basis of the most injurious use within such plan, and equity will restrain from a more injurious use. *Carpenter* v. *E. & A. R. R. Co.*, 9 *C. E. Gr.* 249. When a plan for the use of the condemned land is announced upon the trial of an appeal, the trial judge may properly require it to be entered upon the record by amendment of the issue or otherwise.

Therefore, in this case the jury were properly instructed to make their award upon a consideration of the construction of their railroad by the company in the mode announced by their counsel, which plan of construction the court seem to have designed to be made part of the record.

But counsel for the landowner contended that the crossing of his canal by a solid embankment which would interfere with and destroy his plan for an interior basin was an unnecessary, and therefore an unlawful, invasion of his rights, and requested that the jury should be directed to find whether the crossing should be by a solid embankment or by a drawbridge affording access to the interior basin and to assess the damages

accordingly.   The request was refused, the court ruling that the railroad company could go to the jury upon the plan announced by their counsel as the mode of construction of their railroad.

In this refusal there was no error.   Whether or not a company, exercising the right of eminent domain under a grant from the state, is exceeding the limits of its delegated power, may under some circumstances be considered and determined on a review by the writ of *certiorari.   M. & E. R. R. Co.* v. *Hudson T. Co.*, 9 *Vroom* 548 ; *National Docks, &c., Co.* v. *United, &c., Cos.*, 24 *Id.* 217.   But on the trial of an issue framed on an appeal from the award of commissioners the sole question for the jury is the compensation of the landowner. It is true that the damages of the landowner will largely depend on the mode in which the condemned land is to be used. The petitioning company may describe that mode in their petition and the legality of the plan may then be contested, not before the judge to whom the petition is presented, but by *certiorari* from the Supreme Court.   *National Docks, &c., Co.* v. *United, &c., Cos., ubi supra.*   If the petition is silent in respect to the mode of use, but upon demand the petitioner announces its plan before the commissioners or jury, the Circuit Court, in trying an appeal, is equally without jurisdiction to determine the legality of the plan.   Nor could it submit any question to the jury but that contained in the issue.

The request was properly refused.

Other exceptions present objections to the rulings of the trial judge overruling questions proposed to be asked of various witnesses.

Some of these questions were addressed to a witness, who was a civil engineer and familiar with the locality, as an expert.   They were excluded on the ground that, as to the subject matter of the interrogatories, the witness was not an expert.

No error has been found in the rulings on this subject, and only one of them possesses sufficient importance to be noticed.

This witness was asked as to the best uses to which the land in question could be put.   A landowner may undoubtedly show to what uses his land is adapted, for its adaptability affects its value.   In some cases this may require the evidence of experts, as when he claims that the land has under its surface valuable clay or marl or veins of coal and ore.   But it is for the jury to determine the effect of any peculiar adaptability of use on the value of the land and therefore to say what it is best adapted to.   On that subject the civil engineer could form no better judgment than they could do when the facts are before them.

Other questions were overruled which tended to lay before the jury the condition of the shore front along the Kill von Kull.   The situation and uses of lands in the vicinity of the lands in question sometimes aid in fixing the value of the latter. But as the distance increases the value of such evidence grows less until it vanishes.   It must rest largely within the discretion of the trial judge to draw the line at which such evidence becomes of no practical value.   Unless it appears that the ruling on matters within the discretion of the trial judge worked some injury to the exceptant it will not be disturbed. *Montclair R. R. Co.* v. *Benson,* 7 *Vroom* 557.

The map and case show that the lands in respect to which inquiry was proposed were at some distance and fronted upon other waters.   No error was committed in excluding such inquiry.

The objections shown by other exceptions need not be discussed.   None of them seem to be well taken.

The judgment of the Supreme Court must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, MAGIE, REED, VAN SYCKEL, WERTS, BOGERT, BROWN, CLEMENT, SMITH, WHITAKER.  10.

*For reversal*—None.