JOHN G. GARRETSON ET AL., EXECUTORS OF PETER VAN PELT, DECEASED, PLAINTIFFS IN ERROR, v. CHRISTINA APPLETON, DEFENDANT IN ERROR.

1. A wife can only join with her husband in an action where she is the meritorious cause of it, or the meritorious consideration passes from her, and the action is grounded upon an express contract or promise to pay her a certain sum, and without such express contract or promise to pay she cannot join in the action nor sue in her own name.

2. The wife is not entitled to join with her husband, or to sue in her own name alone, for the care, attendance upon and nursing of a sick boarder of her husband in his household, although the services be of an unusual character, and although they consist exclusively of her own personal services to the boarder.

3. If the wife bestows her personal labor and skill in curing a wound, she may, as the meritorious cause of action, join with her husband, or he may sue alone, provided a promise has been made to the wife to pay her a certain sum in consideration that she would cure the wound. The action in such a case is grounded upon the promise made to the wife.

4. When a request is made to a trial court to charge the jury that the plaintiff has made out the cause of action upon which a recovery should be had, and that a verdict be directed for the defendant, the request for the direction should expressly state the point or matter of law relied on as ground for the direction, and this should be done without the trial court calling for the ground.

5. No error can be alleged in this court except that, either in the objection or the exception taken at the trial, the point or matter of law on which it is grounded be stated to the trial court.

On error to the Supreme Court.

For the plaintiffs in error, *Alan H. Strong.*

For the defendant in error, *James Parker.*

The opinion of the court was delivered by

LIPPINCOTT, J. This action was brought in the name of a married woman, who is the defendant in error, against the executors of the testator, for services which she alleges she rendered to him during an illness of his. The facts as they appeared in the case demonstrate clearly that the contract for such services, which were the care, attendance upon, and the nursing of the testator, was made with the husband of the defendant in error. The deceased engaged board with the husband. The husband was living in a house which was rented of the deceased. He was not engaged in the business of keeping boarders, nor was his wife engaged in such business. His bargain with the husband was to pay so much per week for the board, and any other expenses incurred he would be willing to pay for. This in substance was the contract. The defendant in error, in the management of the household affairs in the house of her husband, beyond the services rendered to the deceased as a boarder, gave to him her personal care, attendance upon him and nursing during a long and serious illness and up to the time of his death. The character of the disease of the deceased made this nursing absolutely necessary, and the character of the services in the nursing and care of him was of an arduous, exacting and sometimes of a repulsive character.

After his death the defendant in error presented a claim for this care, attention and nursing, in her own name, and the executors refusing to pay the same to her she commenced this action against them. In the trial below the only questions which seemed to be litigated were, in the first place, the existence of any contract, express or implied, to pay for these services; secondly, the question of reasonableness of the charges

made by the defendant in error, and thirdly, the question whether the deceased had made payment before his death, and whether the defendant in error, joining with her husband, had receipted and released the claim made for the services rendered. All these questions were properly submitted to the jury, and the determination of them was against the plaintiff in error.

Under these circumstances it is clear that no right of action was in the wife for any claim for such services. If any right of action existed it was in the husband alone, and in any event she must have joined her husband in the action, and therefore it is contended that the judgment of the Supreme Court, affirming this judgment on the ground that the wife was the meritorious cause of action, must be reversed, which would carry with it the reversal of the judgment rendered in the Middlesex Common Pleas, which was the court in which the trial with the jury was had and in which final judgment was entered.

It may be conceded that no right of action existed in the wife, that suing alone, when her husband should be joined, upon proper pleading or exception, the error is fatal, and she is suing without any cause of action, and should fail. In this case she sued without any cause of action, and if the question of her right to recover had been properly raised in the trial court and proper exceptions taken to its rulings, the judgment of the trial court should have been *reversed*. I fully and entirely concur in the opinion of Mr. Justice Depue in this case, under the facts, that no right of action existed in the defendant in error, and I agree with the statement of principles contained in his opinion on this subject.

But the question of whether a right of action existed in the defendant in error was neither raised nor considered by the trial court.

There is an entire silence of the record upon the question of whether she was the proper plaintiff in the action. Whether she could or could not join with her husband in the maintenance of this action, is a question which seems neither to have

been raised nor discussed. The question of whether the plaintiff, as a married woman, was carrying on a separate business of her own in the course of which her services were rendered to the defendant, was not once mooted to the court or jury. Whether she was working as a wife in the ordinary management of the household of her husband in which the deceased was a boarder, or whether upon her own account, was a question not at all presented to the trial judge, either upon an objection to the evidence, on motion to nonsuit, or in any request to instruct the jury. In fact, no motion to nonsuit was made at the close of the case of the plaintiff. Several unimportant objections to the admission of certain evidence were made, principally to the evidence as to the value of the alleged services of the plaintiff as a nurse and attendant upon the deceased, and it may be noted that these services were of such character as to merit the attention of counsel and court to the exclusion of other considerations which might have arisen in the case.

The evidence on the part of the defendant was wholly directed to the character of the services, and to establish the fact that they had been paid for; that these were voluntary services on the part of the plaintiff, and also to the establishment by proof that the claim for such services, if it ever existed, had been released by the plaintiff and her husband. After the close of the case several requests were made to the court to charge. One was that the jury must find an agreement, either express or implied, on the part of Van Pelt to pay for the services rendered, before a recovery could be had; that if the services were rendered in expectation of a legacy from the deceased, there could be no recovery; that a certain paper in evidence, as an exhibit, was, under the circumstances, a bar to the action, and that the paper was an assurance by the plaintiff to Van Pelt that no claim for services would be made against his estate after his death and estopped the plaintiff from a recovery; that it was understood between the parties that no claim should be made for such services, all of which requests were properly dealt with by the court. Up

to this point no intimation, express or implied, had been given to the court that the defendants relied upon the fact that the plaintiff was a married woman. At this point the counsel for defendant called the attention of the court that there was still another request written on the margin of the paper upon which counsel had written his other requests. This request was, that the plaintiff had not made out a cause of action upon which she could recover, and further requesting the court to direct a verdict for the defendants. No ground for this direction was assigned, before that time or then, and the reply of the court to this request shows distinctly that its mind was upon the issues hitherto raised in the case upon questions of fact, and discussed, and not upon the question of whether the right of action was in the wife. Counsel immediately after this reply, upon the retirement of the jury, took an exception to the refusal to charge this request, without at all intimating the ground upon which the exception was taken. The grounds of the other exceptions to the refusals to charge, either in the requests themselves or in the exceptions, are fully stated, and it must be a necessary conclusion that neither court nor counsel understood that within any of the objections and exceptions during the trial, or in any of the requests to charge or exceptions to the instructions given, was included the question of the plaintiff's right to recover, because she was a married woman and could not maintain the action in her own name.

The case was not tried upon this basis, and such an objection nowhere appears in the record, and it is not contended that, as matter of fact, it was ever brought to the attention of the trial court.

It is now, for the first time, alleged as cause of error.

The case furnishes an apt subject for the application of the principle that exceptions will not be considered by this court unless they were alleged in the court below and entered upon the record. Parties cannot be allowed to so change the basis of action and defence, and after having tested the procedure and opinions of the trial court, in all other respects, take advantage of points not taken, noticed or decided by the trial

court. That this is now the settled rule of law in this state cannot be disputed. To have a trial conducted upon any other principle would be manifest injustice not only to the court, but also to the parties to the action. The objection must be made reasonably clear in substance, to the court, whether the reason be demanded by the court or not. It is not sufficient to say that the court can, if it desires, call for the ground of exception. The objection or exception taken should contain the ground or reason, otherwise it may very well be understood that the objection is made upon the basis upon which the cause has been tried, and upon and for no other reason. Any other course is not only unjust, but utterly misleading to the court as well as to the other side. Parties to a cause on trial must take the perils of the concealment of their aims. They are entitled at any time to bring to the attention of the court a fatal objection, but if they conceal it from the court, the risk is irremediable in its results.

It is a fundamental rule in the administration of justice in courts of law, that the point must be clearly stated in which the judge is supposed to err. 3 *Bl. Com.* *372. There can be no error alleged, unless either in the objection or the exception the point of law be stated, and certainly without this the exception cannot be allowed or disallowed, because there can be no matter to the exception.

In *Coxe* v. *Fields,* 1 *Gr.* 215, 218, the court says : " The statute evidently requires that the exception so alleged and written should be to some *opinion,* either declared or refused to be declared by the court below, for the higher court is to allow or disallow the exception according as the *opinion* delivered was right or wrong;" and again, "A bill of exceptions is a statement of the *point* on which the court below gave an opinion, and, if it gave none, how can the higher court say that it gave an erroneous one ?"

In this case the request was that the court direct a verdict for the defendant. This request is made a part of the exception, and neither in the request nor exception was the ground of the coverture of the plaintiff or any other ground stated as a bar to the recovery.

"It is clear that it is not competent for the plaintiff in error to draw in question on a bill of exceptions *points* not raised, nor objected to on the trial. Every motive of policy and convenience forbids. Having failed to do this all such objections are waived." *Allen* v. *Smith,* 7 *Halst.* 159, 168. The doctrine that there must be a substance to the exception is fully supported by all the authorities. "No bill of exceptions is valid which is not for matter excepted to at the trial and ascertained before the verdict." *Walton* v. *United States,* 9 *Wheat.* 651.

It would appear to be a test to ascertain what question was presented to the judge upon which his opinion was taken and to which the exception was addressed. It is well settled that only the *points* on which exceptions were taken are open to examination on error. *Smith* v. *State,* 3 *Zab.* 712, 717. If the *matter* was not raised and considered ·by the court below, then it cannot be examined upon error. *Oliver* v. *Phelps, Spenc.* 180. The ground of exception must be stated and the attention of the court called to the specific point. *Ibid.* Chief Justice Hornblower, in this latter case, aptly expresses the rule applicable when he says, "Surely it will not be pretended that it is sufficient for a party to say, 'I object,' and then, if the judge overrules the objection, to take a bill of exceptions, and thereupon to assign and maintain error for reasons which, if they had been presented to the judge, might have changed his opinion or the ground of objection which might have been obviated at the moment. Such a doctrine would imply omniscience in a judge, or at least instant and intuitive perception of the law in every case. It is not sufficient for a party to say, 'I except to the charge,' and then assign error upon any clause and sentence of the charge. The exceptant must point out and call the attention of the judge to the part or parts of the charge to which he excepts, and then give him an opportunity of correcting himself or of explaining and obviating the objection."

In the case now in hand every issue except that of coverture of the plaintiff had been stated and tried. That issue had not

been stated, and there was nothing in the case up to this point from which it even could be implied that the question of coverture had been or was to be raised. When the request for direction was made the mind of the judge was upon the issues raised in this case and not upon the question of coverture as a bar to the action. The request in any event was not sufficiently specific as to statement of a reason to call for an exception, upon its refusal by the judge, upon any issue which had been presented, and much less was it sufficient and much less would it be calculated to call the mind of the judge to the question of the coverture of the plaintiff as the ground of direction against her.

Upon a motion to nonsuit in the court below every point ruled on must be specifically stated and none other will be considered. The motion must disclose the grounds, to be entitled to consideration. *Trade Insurance Co.* v. *Barracliff*, 16 *Vroom* 543. And certainly a request for a direction of a verdict at the close of the case must state the ground upon which it is made, that the attention of the trial court may be drawn to it in order that he may perceive or not whether it is within the issues tried in the case or whether it is founded upon some point heretofore not controverted.

Every objection to be entertained in this court must have been taken, considered and decided by the court below. *Associates of the Jersey Company* v. *Daveson*, 5 *Dutcher* 415; *Hoey* v. *Lewis*, 10 *Vroom* 501, 507. The exception must be precise. *Conover* v. *Middleton*, 13 *Id.* 382, 383. The point must be embraced in the exception taken below. *Pennsylvania Railroad Co.* v. *Page*, 12 *Id.* 183. For further illustrations of the principles applicable, see *Engle* v. *State*, 21 *Id.* 272; *Ell. App. Pro.*, §§ 325, 326, 327.

The case of *Packard* v. *Bergen Neck Railway Co.*, 25 *Vroom* 553, in this court, has been cited as establishing a contrary principle, but an examination of the case at once reveals that the statement and grounds of exception could serve no purpose of information to the trial court, for the reason is, that in that case the exception was to a proposition of law

which the court had asserted independent of any formal request to charge and to which the exception was specifically addressed.    The attention of the trial court was called directly to the point of law in the charge to which the exception was taken.    The exception was to the very point and matter of law upon which it was contended the court had ruled erroneously, and no more definite or specific manner of calling the attention of the trial court to the alleged error could have been used.

But in the case now here for determination the court was requested to charge that the plaintiff had not made out any cause of action upon which she was entitled to recover and requesting the court to direct a verdict against her.

In this request the specific ground should have been stated, and without it the request was so general that the attention of the trial court was not at all drawn to the point of the objection.    The reply of the court at once sustains this position, and it is evident that the request was entirely indefinite and misleading.

For these reasons the judgment should be affirmed.

DEPUE, J.    This suit was brought by the defendant in error, Christina Appleton, to recover for services in nursing, attending and taking care of the testator during his illness. She brings the suit in her own name.    The plaintiff is, and was at the time these services were rendered, a married woman living with her husband.    The husband and wife lived in a house that was rented by the husband from the deceased. The deceased became a boarder at the house in June, 1891, and continued to board there until October, 1892.    At the time he became a boarder, he was very sick with a disease which subsequently caused his death.    He was then under the care of a physician, who attended him all the while he was at the husband's house.    He became an inmate of the house under a contract made with the husband alone.    The husband, in answer to the question, "Did he make any arrangement with you for nursing him?" testified that "He

said he would pay so much a week for board, and any other expense incurred he told me he would be willing to pay for it." The $4 a week for board was paid regularly. As was said in the memorandum of affirmance in the Supreme Court, " The wife had nothing to do with this contract; it was made with the husband and enured to his benefit. The plaintiff nursed .in his sickness the boarder of the husband, and in doing this she performed the duty of a wife." The judgment was affirmed in the Supreme Court, on the ground that the wife, as the meritorious cause of action, was a proper party to be joined with her husband as plaintiff, and that the omission of the husband occasioned a non-joinder, which could not be taken advantage of under the general issue.

The authority cited for the position that the wife, as the meritorious cause of action, may be joined as plaintiff with her husband, was 1 *Chit. Pl.* 30. The passage in Chitty referred to is as follows: " In general, the wife cannot join in an action upon a contract made during marriage as for her work and labor.    *    *    *    But where the wife can be considered as the meritorious cause of action, as if a bond or other contract under seal or a promissory note be made to her separately or with her husband, or if she bestow her personal labor and skill in curing a wound, &c., she may join with her husband or he may sue alone." The authorities cited by Mr. Chitty for the proposition that where the wife bestows her personal labor or skill in curing a wound, &c., she may, as the meritorious cause of action, be joined with her husband in the action, are 2 *Sid.* 128 ; *Cro. Jac.* 77; 2 *Wils.* 424; *Bac. Abr., tit. "Baron and Feme,"* K. In the case cited from *Cro. Jac.* 77 (Brashford *v.* Buckingham and wife), the action was brought by husband and wife on a promise made to the wife to pay her a certain sum in consideration that she should cure a wound, &c., and the action was held properly brought, for the reason that it was grounded upon a promise made to the wife. The case cited from 2 *Sid.* 128 (Fountain *v.* Smith) was an action by husband and wife, where the consideration moved from husband and wife and the promise was made to

both. In the case cited from 2 *Wils.* 424 (Weller *v.* Baker), which is known as the Tunbridge Wells case, the action was in trespass on the case in tort to recover damages for an injury by the defendant's disturbing the dippers in the exercise of their right or employment, and the joinder of husband and wife was justified for the reason that the action "was not grounded on any contract, express or implied." 2 *Wils.* 414, 422, 427. The passage in *Bacon's Abridgment* is as follows: "If A, in consideration that B, a *feme covert*, will cure a certain wound, assumes and promises to B to pay unto her ten pounds, * * * she may join with her husband in an *assumpsit* for this money." And in the note to that passage by the English editors, it is stated, with a citation of authorities, that "without an express promise the action doth not lie, for the fruit and labor of the wife belong to the husband, for which only he shall bring the action." 2 *Bac. Abr.* 58.

None of the cases cited by Mr. Chitty sustain the view that, upon a meritorious consideration passing from the wife during coverture, she may join in the action, unless there is also an express contract with her. The cases in which the wife is allowed to join with the husband as plaintiff in an action *ex contractu*, on a consideration arising during coverture, are those in which there was an express promise to the wife to pay her, and quite uniformly the decision was in express terms grounded upon such a contract. *Pratt et ux.* v. *Taylor, Cro. Eliz.* 61; *Brashford* v. *Buckingham, Cro. Jac.* 77; *Buckley* v. *Collier*, 1 *Salk.* 114; *Dunstan and wife* v. *Burwell*, 1 *Wils.* 224; *Yard* v. *Eland*, 1 *Lord Raym.* 368; *Philterkirk and wife* v. *Pluckwell*, 2 *Mau. & Sel.* 393; *Nurse* v. *Wills*, 4 *Barn. & A.* 148; *S. C.*, 1 *Ad. & E.* 65; *Bolingbroke and wife* v. *Kerr, L. R.*, 1 *Exch.* 222. The leading cases on this subject are *Brashford* v. *Buckingham* and *Buckley* v. *Collier*, *supra.* In the first of these cases, as already stated, the joinder of the wife was justified for the reason that the action was grounded upon a promise made to the wife, and upon a matter arising upon her skill and upon a performance to be made by the wife personally. In the other case,

husband and wife joined in the suit, declaring that the defendant, being indebted to them for work done by the wife in making him a peruke, promised to pay generally, and had not paid.   The declaration was held bad on demurrer, the court saying that the case differed from Burcher's case, in that there was in that case an express promise to the wife, "but here is no express promise laid to the wife, here is nothing but a promise in law, and that must be to the husband, who must have the fruits of the wife's labor, for which he must bring a *quantum meruit.*"   The cases are collected in an elaborate note to *Chitty's Blackstone.*   The rule there stated is that husband and wife may join in all cases where the cause of action would survive to her, or where she is the meritorious cause of action and there has been an express contract with her.   1 *Chit. Bl. Com.* 360, *note* 44.

The rule of the common law has not, as applied to the circumstances of this case, been altered or modified by the Married Woman's act.   The plaintiff was not carrying on a separate business in the course of which she rendered these services.   Section 4 of the Married Woman's act relates only to wages and earnings acquired or gained in an employment, occupation or trade in which the married woman is employed and which she carries on separately from her husband.   *Rev., p.* 637.   Nor is this case within the principle stated by Chancellor Zabriskie in *Mulford* v. *Peterson,* 7 *Vroom* 481, 487. The language of the Chancellor is as follows :  " Though the earnings of a wife are not within the provisions of the Married Woman's act, yet, in a series of decisions in this state arising out of the spirit of that act, and in accordance with its provisions, it has been held that the earnings of a married woman, working on her own account by her husband's permission, or earned in working for herself without his permission, if given to her by him, are her separate property and within the provisions of that act."   The services the plaintiff rendered to the deceased were not performed when she was working on her own account or working for herself.   In rendering those services, as was said in the Supreme Court,

she performed the duty of a wife. The services, though unusual, were within the range of her domestic duties in caring for a sick man whom the husband had taken to board under a contract with him to pay for such services. Nor is the objection to the form of the action in any sense merely technical. The suit should have been brought by the husband. The deceased having contracted with the husband, his executors are entitled to have the litigation disposed of in an action in which the husband alone is the party, subject to such defences as are available in such a suit.

The plaintiff not being a proper party to be joined with her husband in the suit, the case is not one of non-joinder of a plaintiff within the statute, which is not available under the general issue. Mr. Dicey, in discussing the results of errors as to the joinder of parties in actions by husband or wife, makes this classification : (1) If a husband sues alone where the wife must be joined, the error is fatal. (2) If a wife sues alone where she either must or may be joined, the only result is to expose her to a plea in abatement. (3) If a husband sues with his wife where she neither must nor may be joined, the error is fatal. The author adds in a note that if the wife sues alone in a case where she cannot be joined as plaintiff, she is suing without any cause of action and must fail. *Dic. Part.* 185, 186, and note.

Among the requests to charge was a request that the court instruct the jury that the plaintiff had not made out any cause of action upon which she was entitled to recover, and that the jury be directed to find in favor of the defendants. This request was proper and the refusal to comply with it was error.

It is contended that although the judicial action of the trial court was erroneous, the error is not available upon the bill of exceptions taken. In this view I cannot concur.

It appears on the record that the trial judge, in his charge to the jury, said, " I am requested to charge that the plaintiff has not made out any cause of action upon which she is entitled to recover, and that the jury be directed to find in favor

of the defendants. That is a matter for you [the jury] to determine. You are the judges of the facts in the case and not the court, and from the whole evidence you must ascertain, first, whether she performed these services for Van Pelt, and secondly, you must determine the value of them, and then you must determine whether she released all her right to it by her receipt introduced in the case. You are to determine what her services were and so say by your verdict. I am requested by plaintiff's counsel to charge that if the jury find from the evidence that plaintiff rendered services to the deceased as a nurse, she is entitled to recover the value of such services. I have so charged."

To the refusal to charge as above requested, and to the part of the charge above set out, the defendant excepted in express terms, quoting the language of the request to charge and of the charge delivered, and the bill of exceptions concludes as follows : "Each of which said exceptions so prayed to the charge as given and to the failure to charge as requested as aforesaid, was allowed and is hereby sealed accordingly."

It is settled in this court that a general exception in the form of the exceptions allowed and sealed in this case will draw into review the ruling excepted to without the grounds of exception being set out in the bill of exceptions. *Packard* v. *Bergen Neck Railroad Co.*, 25 *Vroom* 553, 558 ; *Crater* v. *Binninger*, 4 *Id.* 513. In Crater *v.* Binninger the objection on which the judgment was reversed did not appear to have been mooted at the trial, and although, as the court said on page 519 of the report, the probability was that the matter thus escaped the attention of the counsel, jury and court, the judgment was nevertheless reversed, on the ground that the bill of exceptions allowed and sealed disclosed a general exception to the charge on the subject to which the objection related.

I think the judgment should be reversed.

The court being equally divided, the judgment below was affirmed.

*For affirmance* — GARRISON, LIPPINCOTT, LUDLOW, BOGERT, SIMS, SMITH.    6.

*For reversal*—THE CHANCELLOR, DEPUE, GUMMERE, MAGIE, BROWN, TALMAN.    6.